## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MINDEA A. FERRELL : | |
| : | No.: 1:25-cv-1226 |
| v. : | |
| : | |
| AMAZON.COM SERVICES LLC : | JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

COMES NOW, Plaintiff, Mindea A. Ferrell, by her counsel, complains of defendant, Amazon.com Services LLC, as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to the federal Family and Medical Leave Act of 1993 (hereinafter "FMLA").

2. Venue in the District of New Jersey is appropriate because the occurrences which are the subject of this litigation occurred in this District in Burlington County, New Jersey.

### PARTIES

3. Plaintiff, Mindea Ferrell, is an adult individual who resides at 22 Church Street, Mt. Holly, NJ 08060.

4. Defendant, Amazon.com Services LLC, is a limited liability company incorporated in Delaware and has a place of

business located in this Judicial District at 309 Cedar Lane, Florence, NJ 08518 (hereinafter "Florence facility"), in Burlington County.

## FACTS

5. Defendant employs over 501 people nationwide and employed 50 or more people within a 75-mile radius of its Florence facility.

6. At all times material hereto, Defendant operated a "Fulfillment Center" at the Florence facility.

7. Plaintiff commenced employment with the Defendant as a Heavy Equipment Operator at the Florence facility in about March 2022 and she was eligible to take FMLA leave in about March 2023 at the one-year anniversary of her employment.

8. Plaintiff's husband died in October 2023, and her mother died in June 2024, and her son suffers from PTSD and is homeless and she reported him missing to police in June 2024 after she was told he had not been seen by his friends for six (6) months.

9. These multiple life-changing events put Plaintiff under tremendous stress at all times material hereto.

10. In June 2024, Plaintiff started to become overwhelmed with the stress of these life-changing events and felt she was having a breakdown.

11. Plaintiff commenced treatment with a psychiatrist in June 2024 and commenced continuing treatment with a therapist to

treat her for depression, which treatment has continued to date.

12. On or about June 19, 2024, Plaintiff met with Defendant's Human Resources Representative, Olivia Davis, and verbally inquired about filing for FMLA leave in compliance with Section 825.302(c) of the FMLA Regulations.

13. Plaintiff explained that she was undergoing a lot of stress, anxiety and depression and wanted to take FMLA leave for this reason.

14. Ms. Davis verbally instructed Plaintiff to: (1) get a "note" from her doctor that confirmed she was under treatment; and (2) to let her know the time period during which she intended to be out of work.

15. On June 27, 2024, Plaintiff confirmed in an e-mail to Ms. Davis that she was seeing a psychiatrist and expected to send proof of continued treatment as requested.

16. On August 14, 2024, Plaintiff sent an email to Ms. Davis at with a letter attached from Catholic Charities dated August 12, 2024 confirming continuing treatment with a therapist, and in a separate email sent that same day, Plaintiff informed Ms. Davis that she intended to commence leave on September 10, 2024 and return on January 8, 2025.

17. Plaintiff never heard back from Ms. Davis in response to her emails.

18. During the week of September 2, 2024, Plaintiff told

Ms. Davis that she did not hear back from her regarding her emails, and Ms. Davis replied that she received no emails.

19. Plaintiff explained several times that week to Ms. Davis that she sent emails, including a note from her therapist, confirming that she had been treating continuously with the therapist since June 2024 and that she intended to commence leave due to mental health from September 10, 2024 through January 8, 2025.

20. Ms. Davis seemed disinterested and did not appear to write down or otherwise take note of the information.

21. This caused Plaintiff to become more depressed, anxious and confused about what would happen when she started leave on September 10, 2024.

22. Ms. Davis never opened an FMLA claim for Plaintiff in September 2024, even after being told verbally several times by Ms. Davis that she was planning to take continuous leave for more than three consecutive days for mental health reasons starting on September 10, 2024.

23. Despite being placed on verbal notice of Plaintiff's intent to commence FMLA leave on September 10, 2024, Defendant by and through its agents and/or employees took no action in response to this verbal notice.

24. For example, despite the fact that Plaintiff made more than one request for FMLA leave during the week of September 2,

2024, Defendant failed to thereafter notify Plaintiff of her eligibility to take FMLA leave within five business days of her request for FMLA leave pursuant to Section 825.300 (b)(1) of the FMLA Regulations.

25. Furthermore, Defendant thereafter failed to provide written notice to Plaintiff detailing her specific expectations and obligations and explaining any consequences of a failure to meet these obligations pursuant to Section 825.300 (c)(1) of the FMLA Regulations.

26. Defendant's failure to follow the notice requirements in Section 825.300 of the FMLA Regulations constitutes interference with, restraint, or denial of the exercise of Plaintiff's FMLA rights, and Defendant is liable for compensation and benefits lost by reason of these violations, for other actual monetary losses sustained as a direct result of the violations, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered See Sections 825.300(e) and 825.400(c) of the FMLA Regulations.

27. Although Plaintiff may have had as little as 8 weeks of FMLA leave available on September 10, 2024, if properly informed of this limitation pursuant to Section 825.300(d)(6), Plaintiff's healthcare providers would have changed her treatment plan to ensure her timely return to work in a full duty capacity to

ensure her continued employment.

28. Plaintiff commenced her leave on September 10, 2024 as planned.

29. Defendant continued to not adhere to the notice requirements set forth in Section 825.300 of the FMLA Regulations and also failed to request a certification from Plaintiff's healthcare provider to support Plaintiff's requested FMLA leave.

30. On September 25, 2024, Defendant notified Plaintiff that she purportedly "voluntarily" terminated her own employment with Defendant.

31. It is presumed by the wording of its termination letter that Defendant purportedly considered Plaintiff to have purportedly abandoned her employment with Defendant by failing to come to work without a valid excuse for a period of two weeks.

32. Defendant's proffered reason for terminating Plaintiff was mere pretext to mask the true unlawful reason for her termination.

33. Defendant was well-aware that Plaintiff intended to commence FMLA leave on September 10, 2024 for a period of time in excess of three (3) consecutive days for mental health reasons.

34. The true reason why Defendant terminated Plaintiff was because it refused to acknowledge Plaintiff's written and/or verbal requests for FMLA leave.

35. Even if Plaintiff's emails to Ms. Davis, which were

sent in good faith, were not actually delivered or received by Ms. Davis, Plaintiff's verbal notice of her intent to start FMLA leave on September 10, 2024 was a valid request that necessitated action on the part of Defendant.

36. At all times material hereto, defendant acted by and through its agents, employees and/or servants, including Ms. Davis, who had authority to administer FMLA leave, hire, fire and discipline Plaintiff.

## COUNT 1–FMLA Interference

37. Plaintiff repeats paragraphs 1-36 as if more fully set forth herein.

38. Plaintiff provided notice to Defendant of her need for leave pursuant to the FMLA as soon as practicable as required by the FMLA.

39. Plaintiff's treating doctor(s) and/or therapist(s) were health care providers as defined by the FMLA.

40. Plaintiff was at all times on a plan of continuing treatment by her health care providers for a serious and/or chronic health condition (i.e., anxiety and depression).

41. Plaintiff was qualified for and was otherwise entitled to take FMLA leave for at least 8 weeks between September 10, 2024 and November 5, 2024 in that she may have

used some FMLA leave in the twelve months preceding the commencement of her leave.

42. Defendant's unlawful actions set forth above interfered with Plaintiff's FMLA rights by failing to allow her to take valid FMLA leave and thereafter return to the same or equivalent position.

43. As a direct result of Defendant's unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost bonuses, lost benefits and other financial losses.

44. Plaintiff has and will be engaged in great efforts to mitigate her damages by searching for new employment, but she has to date, and will, most likely in the future, be unsuccessful in her efforts to find equivalent employment.

45. Plaintiff seeks to recover liquidated damages in an amount equal to actual damages because Defendant and its agents intentionally, and/or in bad faith, violated the FMLA.

46. Plaintiff seeks to recover reasonable attorneys' fees and costs associated with the prosecution of this lawsuit.

47. Plaintiff seeks immediate reinstatement of her employment.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 1 against Defendant for lost pay, lost benefits, other financial losses, liquidated damages, reasonable attorneys' fees and costs, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033
Fax: 215-546-6269

Date:  February 13, 2025          Attorney for Plaintiff